JONES, Judge.
Plaintiffs, J.J.C., Inc., P.J., Inc. and William Colacurcio, III appeal the trial court’s judgment finding that defendants were entitled to keep insurance proceeds distributed to them under a fire policy on the leased premises which they owned. We affirm the trial court’s judgment.
Plaintiffs are sublessees of premises numbered 423-25-27 Bourbon Street. Co-lacurcio is the president of the two corporations. The premises are owned indivisión by defendants Rosemary Lefevre Edwards, Edward J. Lefevre, III, and JoAnn Lefevre Mullet who inherited it from their father, Edward Lefevre.
On January 23, 1980, Edward Lefevre leased the aforementioned premises to Mr. and Mrs. Jerome J. Conforto. The Confor-tes were obligated in accordance with their lease to maintain insurance in the joint names of lessee and lessor with a loss payable clause to the lessor against fire, and extended coverage in the amount of $50,000.00. The lease required the lessee to make all repairs of any kind at his own expense. Additionally, the fire clause in the lease contract was entirely deleted.
On August 1, 1981, the Confortes subleased the premises to Colacurcio’s corporations, varying the terms of the original lease agreement in two significant respects: 1) lessee and sublessee divided the burden of maintaining insurance and 2) it included the fire clause.
On January 9,1985, a fire occurred in the Bourbon Street property, partially damaging the property. On January 10, 1985, defendants received a check in the sum of $21,540.00 from New Hampshire Insurance Company made payable to the order of Rosemary Lefevre Edwards. The record contains a letter dated March 7, 1985 from Ms. Edwards’ attorney informing the Con-fortes that the check for property loss due to fire had been received by the owners, that it had been conveyed to the owners, that the fire damage had not been repaired and that six other complaints and recommendations were made by the insurer. Therefore, the owners were retaining the proceeds until such time as this work was completed. Testimony at trial was that the work was not completed until April of 1987. However, defendants never surrendered the insurance funds.
*402 On June 24, 1988, plaintiffs filed a Petition for Return of Funds in the Civil District Court for the Parish of Orleans. Therein, plaintiffs alleged that they were owed $21,545.00 plus interest because they paid two-thirds of the insurance premiums on the property, as well as made the repairs.
The case was consolidated with defendants’ suit to evict plaintiffs from the premises. Both cases were tried on September 3, 4, 5, and October 11, 1991. The trial court granted judgment in favor of defendants citing the typewritten provisions of the original lease which required “lessee to make all repairs of any kind at its own expense.” From this judgment plaintiffs appeal.
By their sole assignment of error, plaintiffs allege that defendant was unjustly enriched by retaining the proceeds. Plaintiffs maintain that the owners did not pay the insurance premiums nor did they pay the costs of the fire repairs. They argue further that they were justified in their expectation that they would receive the insurance funds because they paid for the damages caused by the fire and two-thirds of the costs for insurance premiums. The lessees, the Confortes, paid the remaining one-third of the insurance premiums.
Where there are several adverse claimants to the policy proceeds, the court must resort to the language of the policy to determine the rights of each. Unfortunately, the record is deficient in that it does not contain a full copy of the policy issued on the property. All that is presented is a $100,000.00 insurance binder for the period December 10, 1984 through February 10, 1984 (sic) offering fire and extended coverage for vandalism and malicious mischief on the property. The owners are the named insureds and although there is an area to name additional insureds, plaintiffs are not named. Plaintiffs allege that they are loss payees on the policy but the record does not support plaintiffs’ allegations and we can not say the trial court erred in ruling otherwise.
Plaintiffs cite La.C.C. article 2301 for the proposition that one is obligated to restore that which he has unduly received. The five prerequisites necessary to support an action for unjust enrichment are (1) there must be enrichment; (2) there must be impoverishment; (3) there must be a causal relationship between the enrichment and the impoverishment; (4) there must be an absence of justification or cause for the enrichment or impoverishment; and (5) there must be no other remedy at law. Kirkpatrick v. Young, 456 So.2d 622 (La.1984); Bazile v. Arnaud Coffee Co., 465 So.2d 111 (La.App. 4th Cir.), writ denied 468 So.2d 1212 (La.1985).
The trial court’s judgment reflects that the lease made insurance coverage part of the consideration for the contract. In its reasons for judgment the trial court referred to the language in the lease regarding lessee’s obligation to repair at its own expense. The fire provision in the original lease was entirely deleted and a specific provision was added granting the lessee the option of cancelling the lease if the premises were destroyed by fire, clearly indicating that the owner had no intention of repairing fire damage. Furthermore, the lease was a long-term lease, in excess of 31 years, at a fixed monthly rental of less than $2,000.00. We agree with the trial court that as against the owners, the parties sued, plaintiffs’ claim of unjust enrichment has no merit.
For the foregoing reasons, the trial court’s judgment is affirmed.
AFFIRMED.
WARD, J., dissents.
WARD, Judge,
dissenting.
A person who receives what is not due him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom it was unduly received. C.C. art. 2301. I believe this Court errs when it concludes “that as against owners, the parties sued, plaintiffs’ claim of unjust enrichment has no merit.” The facts clearly prove the owners were enriched by the sequence of events while the plaintiffs were impoverished. Embracing the majori *403 ty’s view allows the owners to receive their property in repaired condition while at the same time being paid the cost of repairs made at the plaintiffs’ expense.
The provisions of the lease and insurance policy notwithstanding, I believe the correctly reasoned approach demands a finding of unjust enrichment and award of the insurance proceeds to the plaintiffs.